[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-10453

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 28, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-01027-CV-ORL-19-UAM

TROLLEY BOATS, LLC,
AMPHIBIOUS PARTNERS, LLC, and
LINDA COLLINS,

Plaintiffs-Appellees,

AMPHIBIOUS ATTRACTIONS, LLC, et al.,

Plaintiffs,

versus

CITY OF HOLLY HILL, FLORIDA,
in their individual & official capacities, et al.,

Defendants,

GERALD POTASH,
in his individual and official capacity,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 28, 2009)

Before BIRCH and PRYOR, Circuit Judges and STROM,[*] District Judge.

PER CURIAM:

Appellant Corporal Gerald Potash ("Potash") appeals an order entered by the district court for the Middle District of Florida denying his motion to dismiss Trolley Boats, LLC ("Trolley Boats"), Amphibious Partners, LLC ("Amphibious Partners"), and Linda Collins's (collectively, "Appellees") 42 U.S.C. § 1983 claim on qualified immunity grounds. The Appellees allege that Potash violated their Fourth Amendment rights by effectively adjudicating a property dispute in the face of conflicting information regarding the respective ownership interests of the parties. Because the district court's order did not adequately address the legal standard for qualified immunity cases in our circuit, we VACATE the order and REMAND to the district court for further proceedings consistent with this opinion.

_____

[*] Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

# I. BACKGROUND

The complaint alleges the following facts. Trolley Boats is a Florida-based, limited liability company with two owners during the time relevant to this case: (1) Donald and Gwendolyn Redman and (2) Amphibious Partners, a Wyoming limited liability company. R1-1 at 2. Trolley Boats was managed by Donald Redman ("Redman"), Louis Steplock, Jr. ("Steplock") and David Beagle ("Beagle"). Redman ran the day-to-day operations of Trolley Boats pursuant to an employment agreement until he resigned from his management position in January 2004. R1-1 at 3. After Redman's resignation, Steplock and Beagle hired Thom Moss ("Moss") as General Manager and Linda Collins ("Collins") as Office Manager of Trolley Boats.[1] Redman remained a co-owner of Trolley Boats after his resignation as manager.

On 9 April 2004, Redman informed the City of Holly Hill that he was in an ownership dispute over Trolley Boats and asked for Holly Hill's assistance in removing Moss and Collins from Trolley Boats' premises. Redman did not provide any documentation indicating that he had an exclusive right to control the premises to Holly Hill officials. R1-1 at 5. Nevertheless, Holly Hill dispatched

---

[1] As a "manager managed LLC," Trolley Boats vested each manager with "complete authority, power, and discretion to make any and all decisions and to do any and all things which the Managers shall deem to be reasonably required." Id. (citation omitted).

Potash, a police officer for Holly Hills, and another trainee officer to the Trolley

Boats' facility. Once there, Potash told Moss and Collins to immediately leave the

premises. Id. Moss and Collins objected and attempted to show Potash

documentation proving that Redman did not have an exclusive right to possession

of the premises. Potash ignored Moss and Collins, escorted them off of the

property, and threatened them with arrest if they returned. As a result, Trolley

Boats lost its equipment, cash and inventory located on the premises, Amphibious

Partners lost its investment and its assets located on the property and Collins lost

her personal property and interest in continued employment.

The district court denied Potash's motion to dismiss and determined that

"[p]laintiffs pled specific facts which indicate that Defendant Potash's removal of

Moss and Collins from the Trolley Boats premises and threats to arrest them if they

returned illegally deprived them of their property." R2-43 at 11. Prior to reaching

its decision on the motion to dismiss, the district court considered converting the

motion to dismiss into one for summary judgment, but, given the state of the

record, ultimately decided against doing so. As such, the district court limited its

analysis to the four corners of the complaint.[2]

---

[2] Defendants attached several affidavits and a state court order to their motion to dismiss. In their response to the motion to dismiss, the plaintiffs attached over 180 pages of supporting documents.

## II. DISCUSSION

"We review de novo a trial court's denial of a motion to dismiss a complaint on qualified immunity grounds." Long v. Slaton, 508 F.3d 576, 579 (11th Cir. 2007). In so doing, "we accept the allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the Plaintiffs." Id. We have long held that in order to receive qualified immunity, a government official must first prove that he was acting within his discretionary authority.[3] GJR Investments, Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1366 (11th Cir. 1998). It is then the plaintiff who bears the burden of showing that qualified immunity is not appropriate. Snider v. Jefferson State Cmty. Coll., 344 F.3d 1325, 1327 (11th Cir. 2003).

Qualified immunity represents an accommodation between two conflicting concerns – "the need for a damages remedy to protect the rights of citizens and the need for government officials to be able to carry out their discretionary functions without the fear of constant baseless litigation." GJR Investments, Inc., 132 F.3d at 1366. The immunity "protect[s] from suit all but the plainly incompetent or one who is knowingly violating the federal law." Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003) (citation omitted). Moreover, "[b]ecause qualified immunity

---

[3] It is undisputed that Potash was acting within his discretionary authority at all relevant times.

5

is an entitlement not to stand trial or face the other burdens of litigation, . . . questions of qualified immunity must be resolved at the earliest possible stage in litigation." Id. (quotation marks and citations omitted).

When assessing qualified immunity cases, we consider whether a constitutional right has been violated and whether the right was clearly established by the law at the time of the violation. Saucier v. Katz, 533 U.S. 194, 200, 121 S. Ct. 2151, 2155 (2001). We note that we need no longer apply the "rigid order of battle" prescribed by Saucier but are free "to exercise [our] . . . discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." Pearson v. Callahan, 555 U.S. __, __ S. Ct. __, No. 07-751, slip op. at 10 (2009). Although the Saucier protocol is no longer mandatory, we are mindful of the Supreme Court's affirmation of its underlying rationale. Id. at 11. ("[T]he Saucier Court was certainly correct in noting that the two-step procedure promotes the development of constitutional precedent.")

In this case, however, our work is nonetheless stymied by the lack of exactitude in the complaint and the paucity of analysis by the district court. Given the court's determination that a constitutional right was violated and that the right was clearly established, the Supreme Court's removal of the mandatory nature of the Saucier procedure is of little moment to our present inquiry. We are still

6

charged with elucidating constitutional guidelines. As such, if a court fails to fully develop its analysis, it runs afoul of the Supreme Court's guidance to "advance understanding of the law" in the field of qualified immunity cases. Saucier, 533 U.S. at 201, 121 S. Ct. at 2156.

Here, the district court dedicated one paragraph to its qualified immunity analysis. See R2-43 at 11. The court identified the Fourth Amendment as the constitutional right at issue, correctly cited its mandate, but then failed to explain how the alleged seizure was unreasonable. We have frequently noted that "[b]ecause the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, we must [often] slosh our way through the factbound morass of reasonableness." Long, 508 F.3d at 580 (quotation marks and citations omitted). The district court's silence regarding the Fourth Amendment's reasonableness inquiry only makes our slosh through the morass that much more difficult.

The court's cursory handling of the "clearly established" prong also was markedly devoid of analysis, especially considering our precedent concerning the operative effect of decisions in other circuits. See Thomas ex rel. v. Casey, 323 F.3d 950, 955 (11th Cir. 2003) (holding that "only Supreme Court cases, Eleventh Circuit caselaw, and Georgia Supreme Court caselaw can 'clearly establish' law in

this circuit"). The district court relied solely on <u>Soldal v. Cook County, Ill.</u>, 506

U.S. 56, 113 S. Ct. 538 (1992), in support of the "clearly established" prong even

though the facts in <u>Soldal</u> can be fairly distinguished from those in the case before

us.[4] By summarily concluding that the law was clearly established, the court

bypassed the prong's "relevant, dispositive inquiry" altogether – namely, "whether

it would be clear to a reasonable officer that his conduct was unlawful in the

situation he confronted." <u>Saucier</u>, 533 U.S. at 202, 121 S. Ct. at 2156. This

omission comes dangerously close to violating our admonition to avoid unduly

crediting a shotgun pleading, i.e., one that alleges the violation of abstract rights

not clearly supported by the record. <u>See</u>, <u>e.g.</u>, <u>GJR Investments, Inc.</u>, 132 F.3d at

1369.

### III. CONCLUSION

Potash appeals the district court's order denying his motion to dismiss

Appellees' § 1983 claim on qualified immunity grounds. We conclude that the

district court did not adequately address the legal standard for qualified immunity

cases in our circuit. Accordingly, we VACATE the order and REMAND to the

district court for the limited purpose of providing the district court with the

---

[4] In <u>Soldal</u>, deputy sheriffs assisted a landlord in evicting a tenant from his mobile home, even though the sheriffs knew at the time that the landlord's actions were unlawful. <u>See</u> <u>id.</u> at 59, S. Ct. at 542.

opportunity to expand its qualified immunity analysis. The court is directed to make the determinations as set forth in this limited remand within 120 days from the issuance of this opinion.

**VACATED** and **REMANDED**.